(No. 36820.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROOSEVELT JONES, JR., Plaintiff in Error.

*Opinion filed January 22, 1964.*

ALVIS W. HANEY, JR., of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and WILLIAM J. NELLIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, Roosevelt Jones, Jr., and Luther Woods were indicted by the grand jury of the criminal court of Cook County for the unlawful sale of narcotics to James Moody. Woods pleaded guilty to the charge and the defendant waived his right to a jury trial and was found guilty by the court and sentenced to the penitentiary for a term of not less than 10 nor more than 12 years. We have issued a writ of error to review the judgment of conviction.

The defendant contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Moody testified that he had been arrested and charged with the unlawful possession of narcotics. That charge was still pending at the time of the events involved in the present case and at the time of the defendant's trial. Several days after his arrest, he went to the police station where he was searched and given three $1 bills, the serial numbers of which had been recorded. He was then taken to a cocktail lounge where he met the defendant and asked him to get some narcotics. He gave the defendant the money and the defendant handed the money to Woods. Woods left the lounge and returned in about 8 or 10 minutes and talked to the defendant. The defendant then went outside with Moody and handed Moody a package of marijuana. Moody testified that he gave this package to police officer Wiley, who was in a car outside the lounge.

Woods testified that the defendant gave him $3 and asked him to get some marijuana. Woods then went out and purchased the marijuana from a dealer and returned to the lounge and gave it to the defendant. On cross-examination, Woods admitted that he hoped to get some leniency in exchange for his testimony.

Officer Wiley testified that he entered the cocktail lounge about 5 minutes before Moody came in, and was seated at the bar. He saw Moody come in and have a conversation with the defendant and hand him some money and saw the defendant go over and talk to Woods. Woods then left the lounge for a few minutes and when he returned he handed the defendant a small brown bag which the defendant handed to Moody. Moody then walked out of the lounge and Woods sat down at the bar and handed the barmaid one of the $1 bills and asked for some change. At that time two other officers came in and placed the defendant Woods under arrest.

Police officer James Watts testified that he was in a car outside the lounge at the time of the above events. He saw Moody enter the lounge and about 10 minutes later he came out and handed Watts a package of marijuana and gave him a description of the defendant and Woods. Watts and officer Wilson then went into the lounge and placed the defendant and Woods under arrest. According to Watts, officer Wiley was in the lounge at the time they entered.

Officer Charles Wilson testified that he had searched Moody at the police station and found no money or narcotics on his person. He then gave him the money after recording the serial numbers. When he arrested Woods he found two of the bills in Woods's pocket.

The only evidence offered on behalf of the defendant was the defendant's own testimony. He testified that he had known Moody for about 10 years before the events discussed herein. When he saw Moody in the lounge he

shook hands with him and then saw Moody have a conversation with Woods. He denied that Moody had given him any money and denied participating in any sale of narcotics. He saw Woods leave the lounge but did not notice him come back.

The defendant contends that the testimony of both Moody and Woods is unreliable because they were accomplices and both of them were expecting leniency for their testimony. This circumstance affects only the credibility of the testimony of the two witnesses. The trial judge was fully informed as to the fact that these witnesses hoped for leniency and he believed the testimony of these witnesses rather than the testimony of the defendant.

The defendant also points out certain contradictory portions of the State's evidence. Moody testified that the defendant handed him the narcotics outside the lounge and officer Wiley testified that the transfer occurred in the lounge before Moody left. The second conflict is between the testimony of Moody, who said that he gave the package to officer Wiley in the car, and the testimony of Wiley and Watts, which showed that Wiley remained in the lounge, and that Watts was the man to whom Moody had given the package. There is, however, no conflict between the testimony of Moody and Wiley as to whether the defendant handed the narcotics to Moody. The only discrepancy concerns the place where the transfer was made. The trial judge recognized that the testimony was conflicting upon that point and stated that he would have to resolve that conflict. The trial judge could have reasonably concluded that Moody was mistaken as to the place of the transfer but that his other testimony with respect to the sale was true.

The testimony of Wiley and Watts established that Wiley was in the lounge, and not in the car and it is apparent that Moody was mistaken as to the name of the officer to whom he delivered the package. This discrepancy is insufficient to require a reversal in view of the other clear

evidence of the defendant's guilt. The testimony of Moody and Woods is corroborated, except as to the discrepancies previously discussed, by the testimony of the police officers and by the fact that the money was found in Woods's possession immediately after the sale.

The defendant also points out that the evidence showed that there was another police officer in the car when Moody handed the narcotics to officer Watts. The defendant contends that the failure of the State to produce this officer as a witness creates a presumption that his testimony would be contradictory to that of the other witnesses. The State is not obligated to produce every witness to a crime and the failure to produce a witness does not give rise to a presumption that the testimony of that witness would be unfavorable to the prosecution.

From our review of the record we are satisfied that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt and the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*