THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHESTER HENRY *et al.,* Defendants-Appellants.

(No. 53923;

First District—December 23, 1971.

*Rehearing denied January 13, 1972.*

Gerald W. Getty, Public Defender, of Chicago, (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Nicholas DeJohn and Robert A. Novelle, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Chester Henry and Garry Marks waived jury trials, were found guilty, sentenced and fined—Henry for attempt murder, armed violence and resisting arrest, Marks for aggravated battery and resisting arrest.

The alleged offenses occurred on the night of April 7, 1968, during a period of civil disturbances in the City of Chicago. Looting, rioting and sniping were taking place; a dusk to dawn curfew was in effect and police officers were patrolling the streets in 12-hour emergency shifts. Among those officers were Harry Engel, Stanley Makowicz, Arthur Silich and Fred O'Reilly of the Chicago Police Department. All were in uniform and were riding in an unmarked squad car on Chicago's west side. As they rode west on Madison Street about 9:00 P.M. they heard some shooting. Engel, the driver, turned the car into Francisco Avenue and pursued two men who were seen one and a half blocks away running south towards

Adams Street. No other pedestrians were on Francisco. The men turned west at Adams and the squad car followed.

When the car turned the Adams corner, Engel saw the defendants, Henry and Marks, 75 to 125 feet ahead of him, running diagonally from the north to the south side of the street. Henry made a half turn and fired two shots. The night was dark and Engel did not see the gun but saw flashes as it was discharged and believed (and testified) that the shots were fired in the direction of the car. Engel shouted, "Watch out, he's shooting" and stopped the car.

Makowicz, who was seated directly behind Engel, saw Henry stop and point his arm at the car. He saw two flames and heard two shots. The officer seized a carbine, jumped out of the car and chased the defendants on the south sidewalk as they ran to the west. Silich and O'Reilly ran in the street. The three officers called for the men to halt and threatened to shoot. The defendants slowed to a walk and Henry threw an object into a yard. Engel pulled up in the squad car and, armed with a carbine, approached the men as Silich and O'Reilly converged on them. The defendants protested their arrest and flayed their arms, striking two of the officers. Engel placed his carbine in Henry's back and told him to stand still or he would fire. The scuffling stopped; the defendants were arrested and handcuffed.

Silich recovered the object Henry threw away, a revolver with three loaded and two expended cartridges. Engel searched Henry and found a holster on his person and 12 live and three spent shells in his pocket. Henry admitted that it was his gun. He said he shot in the air and not at the police car. He also stated that Marks did not know prior to the shooting that he had a firearm.

Henry lived at 2917 Adams with his wife and three children. His home was on the south side of the street, west of Francisco. At his trial he stated that he had not been on Francisco that night. He said that he and Garry Marks, who had been at his house, had just left there and were walking, not running, on the south sidewalk on their way to the home of Garry's brother at 2951 Adams when he heard someone shout "Halt." At the second command he turned around and saw an auto in the middle of the street and noticed a man standing at its right rear door. He was able to make out a white face and surmised the man was a policeman. He stopped walking, raised his hands over his head and, as he did so, lifted his gun from its holster and tossed it aside because it was not registered. He testified that there were 15 cartridges but no expended shells in his pocket and that he had fired the gun that night but had done so in his own back yard before leaving home.

Marks testified he did not see Henry fire a gun and did not know he

had one. His brother, who had been at Henry's house, left for home and he and Henry followed. They walked on the south side of Adams. When someone said "Halt" Henry looked around and said, "We better stop, there's the police." Portions of his testimony and Henry's were corroborated by his brother and by Henry's wife, and by Henry's mother and sister who lived in another apartment in Henry's building.

The defendants were indicted for the offense of attempt murder and charged specifically with intentionally attempting to kill Harry Engel. The trial court found Henry guilty of this crime. It found Marks not guilty of attempt murder but guilty of the "lesser included offense of aggravated battery." The State admits that the latter finding was a mistake because of the lack of bodily harm to or physical contact with Engel, the alleged victim, as required by the aggravated battery statute. (Ill. Rev. Stat., 1967, ch. 38, par. 12—4(a) and (b) (1).) The State's position is correct and Marks' conviction for aggravated battery is reversed.

The State, desirous of finding Marks guilty of some sort of punishable conduct under the attempt to murder count in the indictment, suggests that he was guilty of aggravated assault and urges this court to reduce the degree of the offense for which he was convicted, under the authority of Ill. Rev. Stat., 1967, ch. 110A, par. 615(b) (3). This suggestion necessarily implies that aggravated assault is a lesser included offense in the crime of attempt murder. The indictment and the facts in the present case do not allow such implication. A detailed discussion of the elements of the two offenses and the applicable law would be superfluous because the only theory upon which Marks could be held guilty of any offense under the attempt murder count is that of legal accountability for Henry's conduct (Ill. Rev. Stat. 1967, ch. 38, par. 5—2(c)), and the accountability theory becomes academic in view of our conclusion that Henry was not guilty of attempt murder.

The essence of the crime of attempt murder is the specific intent to take life. (*People v. Drink* (1967), 85 Ill.App.2d 202, 229 N.E.2d 409.) Although an intent to take life may often be inferred from the character of an assault, the use of a deadly weapon, or the circumstances surrounding the act, the State's evidence failed to establish that the shots were fired with an intent to kill. The night was dark and there was substantial testimony that all or some of the street lights were out. Henry was near his home when the car, unmarked and with no revolving light on its top, swung into Adams Street in his direction. Taking into account the violence in the streets and the approaching vehicle, Henry could have apprehended danger. When he turned toward the car he was looking into its headlights; its occupants were barely visible. Two officers said he fired in the direction of the car; two did not say he did. Despite Engel's testimony that the

gun was fired at the car, he conceded that he could have seen the flashes if the gun had been held at a right angle to the car or pointed straight up in the air. Henry was an ex-Marine with an expert rating in marksmanship. If he had fired at the car, it is unlikely that he could have missed such a large target. Furthermore, the police stated that upon his arrest he said he had shot aimlessly in the air. These qualifying facts raise a reasonable doubt of Henry's guilt. While we do not condone his violating the curfew, carrying a loaded revolver or firing it on the City's streets, the evidence falls short of establishing that he was actuated by such wanton and reckless disregard for human life that an intent to take the life of the driver of the car may be reasonably deduced from either his conduct or the surrounding circumstances. The defendant's conviction for attempt murder is reversed.

Both defendants were indicted for the offense of armed violence "in that they, while armed with a dangerous weapon, knowingly resisted and obstructed the performance of one Henry Engel, known to said Chester Henry and said Garry Marks to be [a] peace officer * * * of an authorized act in his official capacity as such police officer * * *." Only Henry was found guilty of this offense.

Under the indictment and the pertinent statutes (Ill. Rev. Stat., 1967, ch. 38, par. 33A—2 and 31—1) the State had the burden of proving that Henry, while knowing that Engel was a police officer and while armed with a dangerous weapon, knowingly resisted or obstructed Engel from performing the duties of his office. The State utterly failed to prove these essential elements. At the time Engel participated in the arrest Henry was unarmed. He had thrown his gun away before Engel got out of the car. He received no order from Engel and did not even know of Engel's existence until after he discarded the weapon. While the other officers gave pursuit on foot and shouted their commands, Engel continued to drive the car. He approached Henry just as the arrest was being made. However meritorious an indictment might have been for disobeying the orders of Makowicz, Silich or O'Reilly, there was no evidence that Henry possessed a dangerous weapon when he resisted Engel.

■■■ The defendants were indicted for and found guilty of resisting arrest by Officer Engel. Each was sentenced to confinement at hard labor in the penitentiary for one year and fined $500. These convictions are affirmed. Engel and the other officers testified that a scuffle preceded the arrest and that the defendants were not subdued until Engel shoved his carbine in Henry's back. Henry testified that when he stopped walking at the officers' command a policeman came up behind him, hit him in the back of the neck and handcuffed his hands behind him. An officer said, "You have been out shooting." Henry said he had not, that he had just

come out of his house. The gun was recovered and a policeman then said, "You shot at us. We got the gun. You shot at us." When Henry denied shooting at them he was struck across the forehead with a revolver and kicked in the chest as he fell to the ground. He and Marks denied resisting the officers. The credibility of the witnesses and the resolution of the conflicting testimony was for the trial court to determine. (*People v. Cooper* (1966), 69 Ill.App.2d 18, 216 N.E.2d 168.) The State's evidence was sufficient to prove that the defendants obstructed the performance of Engel's duties.

■■ Although the convictions for resisting arrest are affirmed, the cause must be remanded for resentencing. The statute provides that a person found guilty of this offense shall be imprisoned in a penal institution other than the penitentiary. (Ill. Rev. Stat., 1967, ch. 38, par. 31—1.) Sentencing the defendants to the State penitentiary was error—inconsequential perhaps when the higher concurrent penitentiary sentences imposed by the court for the other offenses are considered—but consequential in view of our reversal of those sentences. If the defendants have not satisfied their punishment for the offense of resisting arrest, they are to be resentenced in conformity with the statute.

The convictions of Chester Henry for attempt murder and armed violence are reversed. The conviction of Garry Marks for aggravated battery is reversed. The convictions of both defendants for resisting arrest are affirmed. The sentences for resisting arrest are to be reimposed in compliance with this opinion.

Reversed in part; affirmed in part and cause remanded.

McNAMARA, P. J., and McGLOON, J., concur.