THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SUE TAYLOR, Defendant-Appellant.

Third District   No. 79-863

Opinion filed June 6, 1980.—Rehearing denied June 24, 1980.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The defendant, Sue Taylor, was charged by complaint with battery and obstructing a peace officer, in violation of sections 12—3(a)(1) and 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 12—3(a)(1) and 31—1). Following a jury trial, the defendant was acquitted of the battery charge but was convicted of obstructing a peace officer and was sentenced to pay a $100 fine.

The evidence established that on February 1, 1979, city of Peoria police officer Charles Lyons, who was assigned to crowd-control duty at the Peoria County courthouse, was asked to escort two prisoners from courtroom 405 to a waiting van for transportation to the county jail. This procedure required the officer to accompany the prisoners down the fourth floor corridor to the elevator, take the elevator to the ground floor and then out to the waiting van. Under these circumstances, it was established police procedure that all prisoners be handcuffed and that only the prisoners and accompanying police officers be allowed into the elevator as the prisoners were being transported.

Officer Lyons was accompanied by Sergeant Sanderfer of the city of Peoria police department and two Peoria County sheriff's deputies, Bill Hyder and Howard Elam. All of the officers were dressed in their police uniforms. The prisoners walked ahead of the Peoria County sheriff's deputies, with the city officers behind them. As they proceeded down the hallway, a sizeable crowd of people, who had gathered within the courtroom, filed out and followed them down the corridor. The crowd was loud and noisy but did not make any threatening gestures to either the prisoners or the officers. As they reached the elevator, the people crowded around the elevator door. After the elevators doors opened, the prisoners were the first ones to enter the elevator, then the two county sheriff's deputies and then the two city officers.

Officer Lyons testified that after entering the elevator he informed the persons gathered around the elevator that no persons other than the prisoners and officers were allowed in the elevator. At that time, the wife of one of the prisoners started pushing and shoving in an attempt to get

into the elevator. She was part way in the elevator when Officer Lyons and another officer began to physically remove her. According to Officer Lyons' testimony, a hand then came from the crowd and grabbed him by the hair and physically pulled him out of the elevator.

The defendant was identified by all four officers as the individual who pulled Officer Lyons' hair. Lyons further related that he then pushed the defendant, managed to get free, picked up his hat and got back into the elevator.

The defendant admitted pulling the officer's hair, but claimed that it was in self-defense. She claimed that the officer first struck her on the breast with his hand. This claim was denied by Officer Lyons. Each of the officers denied seeing Lyons touch or strike the defendant prior to the hair-pulling incident.

The entire incident at the elevator occurred in a period of not more than a minute to a minute and a half. Based on this incident, the defendant was charged with battery in that she struck Officer Lyons about the face and pulled him with her hands, and with obstucting a peace officer by pushing and shoving Officer Lyons. She was acquitted of the battery charge and convicted of obstructing a peace officer.

The defendant first argues on appeal that the discrepancy between the allegation in the criminal complaint charging her with obstruction and the actual evidence produced at trial is fatal to the State's case against her and must result in a reversal of her conviction. The criminal complaint alleged that she pushed and shoved the officer while the evidence established only that she pulled his hair. On this basis the defendant contends that the State failed to establish an element of the charged offense of obstructing a peace officer; specifically, that the defendant performed the necessary voluntary act of pushing or shoving Officer Lyons. We disagree with the defendant's contention. While it is true that "[a] material element of every offense is a voluntary act * * * " (Ill. Rev. Stat. 1977, ch. 38, par. 4—1), the act prescribed here and the act proved are not at fatal variance.

■■ In examining the effect of a variance between the charging instrument and the proof presented at trial, the test is whether the offense charged is sufficiently set forth so that an accused can properly prepare his defense and raise the judgment as a plea in bar to a later prosecution for the same offense. If those requirements are satisfied, a variance between the allegations and proof will not be fatal. (*People v. Jayne* (1977), 52 Ill. App. 3d 990, 368 N.E.2d 422; *People v. Beacham* (1977), 50 Ill. App. 3d 695, 365 N.E.2d 737.) To be fatally defective, the variance must be material and of such character as to have misled the accused in making his defense or exposed him to double jeopardy. (*People v. McGee* (1979), 72 Ill. App. 3d 576, 391 N.E.2d 5.) In applying this test, all of

the evidence produced at trial can now be considered in determining whether a trial is a bar to future prosecutions. *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437.

Applying these principles to the instant case, it is clear that the defendant's conviction would bar any future prosecutions concerning the incident in question. Where, as here, the crime involved, namely, obstructing a peace officer engaged in the execution of his official duties, can be committed by several acts, a variance between the act named in the charging instrument and the act proved at trial will not be fatal. *People v. Simpkins* (1971), 48 Ill. 2d 106, 268 N.E.2d 386; *People v. Nelson* (1965), 33 Ill. 2d 48, 210 N.E.2d 212, *cert. denied* (1966), 383 U.S. 918, 15 L. Ed. 2d 671, 86 S. Ct. 911.

■■ The fact that no evidence was introduced to support the allegation that the defendant pushed or shoved Officer Lyons is not fatal to the conviction. The evidence did establish an act from which the jury could have found the defendant guilty of obstructing a peace officer. Thus, proof of the crime conformed to the essential allegations of the charging instrument.

The defendant next argues that the evidence failed to establish that she performed the act complained of with knowledge that she was obstructing Officer Lyons in the performance of an authorized act within his official capacity. This argument is without merit.

Section 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 31—1) provides as follows:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor."

In the case at bar, Officer Lyons and the three other officers were dressed in uniform. The prisoners they were escorting had been sentenced and turned over to the police authorities for transportation to the county jail. As they escorted the prisoners down the hall toward the elevator, it was obvious to everyone in the passageway, including the defendant, that the officers were performing an act within their official capacity. With this knowledge the defendant pulled Officer Lyons' hair, thereby disrupting and impeding him in the performance of his official duties. The evidence clearly shows that the defendant possessed the requisite mental state while committing an act sufficient to support the defendant's conviction for obstructing a peace officer.

The defendant's third argument on appeal concerns the fine of $100 she was ordered to pay as a result of her conviction. The defendant argues that the trial judge failed to make a determination of her financial resources and ability to pay the fine. We find this argument spurious, as

the record adequately establishes her ability to pay the $100 fine imposed.

The defendant was able to post bond of $300 to secure her release from custody two days after being incarcerated for the two-count criminal complaint filed in the instant case. If she had the means to procure bail, it is reasonable to infer that she would likewise be financially capable of paying the fine.

■■ Finally, the defendant contends that her $100 fine should be reduced by $5 for each of the two days she was incarcerated prior to trial and before she posted bail, relying on section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 110—14).

The State concedes that the defendant is entitled to the requested credit of $10, thus reducing her fine to $90. Although the defendant did not make a timely application for the credit, under *People v. Brown* (1980), 83 Ill. App. 3d 261, 403 N.E.2d 1324, and *People v. Winkler* (1979), 77 Ill. App. 3d 35, 395 N.E.2d 671, the failure to make a timely request does not waive the issue, where, as is the case here, the record is devoid of any indication that the clerk notified the defendant of this provision in writing, as required by the statute.

For the foregoing reasons we affirm the defendant's conviction and sentence, as modified, to reflect a $10 credit against the fine.

Affirmed, as modified.

STOUDER and BARRY, JJ., concur.